## RECORD NO. 14-4668

*In The*

# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## RONALD CENTENO,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

————————

## BRIEF OF APPELLANT

————————

ROSS HALL RICHARDSON,
EXECUTIVE DIRECTOR
FEDERAL DEFENDERS OF
WESTERN NORTH CAROLINA, INC.

Joshua B. Carpenter
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.
One Page Avenue, Suite 210
Asheville, North Carolina  28801
(828) 232-9992

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................iii

INTRODUCTION .............................................................................................1

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE ............................................................................2

    I.    Trial ...................................................................................................3

    II.    Sentencing .......................................................................................6

SUMMARY OF ARGUMENT...........................................................................9

STANDARD OF REVIEW ...............................................................................11

ARGUMENT ...................................................................................................11

    I.    The district court erred by sustaining two § 924(c) convictions
        based on a single use of a single firearm. ....................................11

        A.    As a matter of statutory interpretation, a single use of a
              single firearm to commit multiple predicate offenses
              constitutes only a single violation of § 924(c)—as the
              Second, Fifth, Sixth, Seventh, Tenth, and D.C. Circuits
              have correctly concluded...............................................14

        B.    This Court's decision in *United States v. Luskin* does not
              resolve the question presented in this case ......................20

        C.    The predicate offenses in this case were committed
              simultaneously based on a single use of a single firearm ..............25

    II.    The district court plainly erred by not dismissing Count Two ................28

CONCLUSION ....................................................................................................29

REQUEST FOR ORAL ARGUMENT...........................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell v. United States,*
   349 U.S 81 (1955) ........................................................................14, 15, 19

*Burrell v. United States,*
   467 F.3d 160 (2d Cir. 2006) ...................................................................28

*Consolidated Coal Co. v. Local 1643, United Mine Workers of Am.,*
   48 F.3d 125 (4th Cir. 1995) ....................................................................25

*Henderson v. United States,*
   133 S. Ct. 1121 (2013) ............................................................................28

*Muscarello v. United States,*
   524 U.S. 125 (1998) ................................................................................18

*Simpson v. United States,*
   435 U.S. 6 (1978)....................................................................................16

*United States v. Abdelbary,*
   746 F.3d 570 (4th Cir. 2014). .................................................................11

*United States v. Anderson,*
   59 F.3d 1323 (1995)................................................................................15

*United States v. Barefoot,*
   754 F.3d 226 (4th Cir. 2014) ..................................................................28

*United States v. Burnette,*
   170 F.3d 567 (6th Cir. 1999) .........................................................13, 24-25

*United States v. Camps,*
   32 F.3d 102 (4th Cir. 1994) ...........................................................*passim*

*United States v. Cappas,*
   29 F.3d 1187 (7th Cir. 1994) ..................................................................23

*United States v. Casiano,*
    113 F.3d 420 (3d Cir. 1997) ...................................................................13

*United States v. Cureton,*
    739 F.3d 1032 (7th Cir. 2014) .......................................................*passim*

*United States v. Diaz,*
    592 F.3d 467 (3d Cir. 2010) ...................................................................13

*United States v. Dunford,*
    148 F.3d 385 (4th Cir. 1998) ...........................................................14, 18

*United States v. Finley,*
    245 F.3d 199 (2d Cir. 2001) .........................................................*passim*

*United States v. Granderson,*
    511 U.S. 39 (1994) .................................................................................19

*United States v. Hemingway,*
    734 F.3d 323 (4th Cir. 2013) .................................................................22

*United States v. Johnson,*
    25 F.3d 1335 (6th Cir. 1994) .....................................................9, 12, 25

*United States v. Khan,*
    461 F.3d 477 (4th Cir. 2006) .................................................................13

*United States v. King,*
    628 F.3d 693 (4th Cir. 2011) .................................................................28

*United States v. Looney,*
    532 F.3d 392 (5th Cir. 2008) .................................................................24

*United States v. Luskin,*
    926 F.2d 372 (4th Cir. 1991) .......................................................*passim*

*United States v. Malone,*
    222 F.3d 1286 (10th Cir. 2000) ......................................................13, 24

*United States v. Paladino,*
    401 F.3d 471 (7th Cir. 2005) .................................................................24

*United States v. Phipps,*
   319 F.3d 177 (5th Cir. 2003) ...............................................................*passim*

*United States v. Privette,*
   947 F.2d 1259 (5th Cir. 1991) ..............................................................23

*United States v. Rahim,*
   431 F.3d 753 (11th Cir. 2005 ...............................................................13

*United States v. Rahman,*
   189 F.3d 88 (2d Cir. 1999) ...................................................................24

*United States v. Rentz,*
   --- F.3d ---, 2015 WL 430918 (10th Cir. 2015) ...................................*passim*

*United States v. Romero,*
   122 F.3d 1334 (10th Cir. 1997) ............................................................13

*United States v. Salameh,*
   261 F.3d 271 (2d Cir. 2001) .................................................................25

*United States v. Sandstrom,*
   594 F.3d 634 (8th Cir. 2010) ............................................................ 9, 12

*United States v. Wallace,*
   447 F.3d 184 (2d Cir. 2006) ...................................................9, 12, 17, 25

*United States v. Wilson,*
   160 F.3d 732 (D.C. Cir. 1998) .............................................9, 12, 17, 20

## STATUTES

18 U.S.C. § 922(g) ...................................................................................18

18 U.S.C. § 924(c) ............................................................................*passim*

18 U.S.C. § 924(c)(1) ...........................................................12, 15, 17, 23

18 U.S.C. § 924(c)(1)(A) ............................................................11, 17, 28

18 U.S.C. § 924(c)(1)(A)(i) ....................................................................11

18 U.S.C. § 924(c)(1)(C)..................................................................... 6, 11

18 U.S.C. § 1201(a)(1) .........................................................................27

18 U.S.C. § 1951(a) ...............................................................................2

18 U.S.C. § 1952A ...............................................................................21

18 U.S.C. § 2119 ....................................................................................2

18 U.S.C. § 3231 ....................................................................................1

18 U.S.C. § 3553(a) ...............................................................................8

18 U.S.C. § 3742 ....................................................................................2

28 U.S.C. § 1291 ....................................................................................2

## **RULE**

4th Cir. L. R. 36(a)..............................................................................29

## **OTHER AUTHORITIES**

114 Cong. Rec. 22, 231 (1968)............................................................11

115 Cong. Rec. 34, 838 (1969)............................................................19

## INTRODUCTION

This appeal presents a question of first impression in this circuit: Does a single use of a single firearm to commit two simultaneous crimes of violence support one conviction under 18 U.S.C. § 924(c) or two convictions?  Six circuits have held that § 924(c) authorizes only one conviction in such circumstances, while one has reached the opposite conclusion.

Here, the district court followed the minority rule and entered judgment on both of Ronald Centeno's § 924(c) convictions, which arose from a single use of a firearm to simultaneously commit the offenses of carjacking and attempted Hobbs Act robbery. Based on that ruling, the court was required to impose a 25-year mandatory minimum for a "second or subsequent" § 924(c) conviction—a sentence the district court described as "a very tough sentence" under the facts of this case. JA 345.

This Court should join the majority of circuits, which have correctly held that § 924(c) authorizes only one conviction in the circumstances of this case. It should therefore vacate Centeno's second § 924(c) conviction.

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of North Carolina had jurisdiction over this criminal case based on 18 U.S.C. § 3231. The district court entered a final judgment on August 14, 2014. JA 353.  Centeno timely appealed on

August 26, 2014. JA 359. This Court has jurisdiction under 18 U.S.C. § 3742 and 28
U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Does a single use of a single firearm to commit two simultaneous crimes of
      violence support one conviction under 18 U.S.C. § 924(c), as the Second, Fifth,
      Sixth, Seventh, Tenth, and D.C. Circuits have held, or two convictions, as the
      Eighth Circuit has held?

II.   Did the district court plainly err in not dismissing Count Two?

## STATEMENT OF THE CASE

On December 11, 2012, the grand jury for the Western District of North
Carolina returned an indictment that charged Centeno with a carjacking in violation of
18 U.S.C. § 2119 (Count One) and an attempted robbery of marijuana in violation of
the Hobbs Act, 18 U.S.C. § 1951(a) (Count Three). In addition, the indictment
charged Centeno with two violations of 18 U.S.C. § 924(c): Count Two alleged that he
possessed a firearm "during and in relation to" the carjacking charged in Count One;
Count Four alleged that he carried a firearm "during and in relation to," and
possessed a firearm "in furtherance of," the Hobbs Act robbery charged in Count
Three. JA 9-10. The indictment alleged that all four offenses occurred on August 9,
2011.

Centeno pled not guilty and proceeded to trial.

2

## I.    Trial

At trial the government's evidence showed that the carjacking and attempted marijuana robbery occurred at a Circle K gas station in Charlotte, North Carolina, at approximately 11 p.m. on August 9, 2011. Earlier that day, Centeno arranged to purchase a quarter-ounce of "perp"—described as "a higher grade of marijuana"—from Anthony Garcia, who testified that he had sold marijuana to Centeno on two prior occasions. JA 91-94. Garcia did not have the exact product that Centeno requested, but his friend Anthony White (known to him as "Kaos") did, so Garcia picked up White and drove him to the gas station to meet Centeno. JA 94-97.

Shortly after Garcia parked his car at the station, Centeno arrived in a car with several other passengers and parked beside Garcia. JA 97-98. Centeno sat down in the backseat of Garcia's car and briefly inspected the marijuana before asking one of the other passengers, a black male, to join him. JA 43, 50, 98. Then, according to Garcia and White, the black male sat down in the backseat on the driver's side, pointed a gun at Garcia, and demanded that he drive to the parking lot of a nearby school. JA 43-44, 98-101.

Garcia pulled out of the gas station and began driving toward the school, and the other car (the one that Centeno arrived in) followed a little ways behind. JA 102-03. Garcia then bailed out of his moving car, which veered off the road and crashed into a house. JA 44, 105. Garcia ran back to the gas station and borrowed a witness's phone to call the police. JA 81, 107. The other three passengers exited the car at the

scene of the crash. Centeno and the black male got into the other car, while White went to "some random neighborhood" and called a friend to pick him up. JA 46. At the crash scene, officers later recovered several items from the car, including "a book bag in the front seat," "1.2 grams of marijuana in the center console," a cell phone and "5.8 grams of marijuana in a Ziploc baggie" in the back seat, and "a watch on the floorboard." JA 66-67, 70.

The government presented two eyewitness accounts of what happened inside the car. White testified first. He explained that "a light-toned male" entered the car first and sat in the backseat. JA 42-43. White handed him the marijuana and proceeded to "negotiate[e] the prices a little bit." JA 43. The light-toned male explained that he was purchasing the marijuana together with another person, so he called that person over to join him in the car. The second person—whom White described as "a dark-toned black male"—then sat down in the backseat as well. JA 43, 50. "At that point," White explained, "a gun was pulled out, and, um, we were told to drive." JA 43, 51. At trial White could not remember which of the two individuals had the gun. JA 43. He acknowledged, however, that his written statement to police shortly after the incident says that the dark-toned individual had the gun while the light-toned individual had a taser. JA 51-53. In addition, White explained that before Garcia jumped out of the moving car, one of the individuals demanded his backpack and his wristwatch. JA 44-45. White also noted that the two individuals "had the

marijuana already" because he had handed it to the light-toned male when he first entered the car to negotiate the price. JA 45.

Anthony Garcia also testified about his recollection of the incident. He explained that Centeno got in his car behind the passenger seat and "look[ed] at the weed" before getting back out and calling his friend to join him. JA 98. The friend—whom Garcia described as a "black kid"—got in the car behind the driver's seat. JA 99. "As soon as I looked back," Garcia recalled, "the black kid had the gun to my face." JA 99. Garcia said that Centeno was also holding "a metal object" that looked like a gun, but he didn't know if it was a gun or some other type of device. JA 100, 118-20.[1] The black kid told Garcia to "back out [of] the gas station and go towards the school" that was nearby. JA 101. According to Garcia, Centeno reached into the front seat and "took the weed." JA 101-03. In addition, Garcia said that Centeno asked for and took White's wristwatch. JA 101-03.

Throughout trial, Centeno repeatedly moved for judgment of acquittal on all counts but the district court denied each motion. JA 202-03 (close of government's evidence); 220-21 (renewed motion at end of defense case); 305 (renewed motion following jury verdict). At the government's request, the court included an aiding-and-

---

[1] The government also elicited testimony from Michael Wallace, who was one of the other passengers in Centeno's car on the day of the robbery. JA 129. Wallace testified that Centeno and the other individual carried out the robbery using a single firearm (a .32 caliber pistol) and a taser. JA 137. When they exited their car at the Circle K and entered Garcia's car, Centeno had the taser and the other individual had the gun. JA 137.

abetting jury instruction, which permitted the jury to convict Centeno on the § 924(c)

counts if he "knew that a gun would be used or carried during the commission of the

offense" and "facilitated or encouraged the use, carrying or possession of that weapon

in some way" even if he did not use, carry, or possess it himself. JA 203-04, 228-29,

264, 272. The court also instructed the jury that a taser does not qualify as a firearm

for purposes of the § 924(c) charges. JA 261.

The jury returned a verdict of guilty on all four counts. JA 308-09. On the two

§ 924(c) counts, however, the jury found that Centeno did not "brandish" the firearm.

JA 308-09.

## II.    Sentencing

Before sentencing, the probation officer prepared a presentence investigation

report ("PSR"), which asserted that Centeno faced an advisory guidelines range of 100

to 125 months for Count One (carjacking) and Count Three (Hobbs Act robbery). JA

369-70, 378-79. The PSR also stated that the § 924(c) convictions in Counts Two and

Four carried mandatory minimum sentences of 5 years and 25 years, to be served

consecutively to each other and to the sentences on Counts One and Three. JA 378;

*see also* 18 U.S.C. § 924(c)(1)(C) (mandating a 25-year consecutive sentence for "a

second or subsequent conviction" under § 924(c)).

Centeno objected. JA 383, 385-88. He argued that the facts supported only one

§ 924(c) conviction because there was "only one firearm involved" and "only one

event in which a combination carjacking and armed robbery took place." JA 385; *see*

6

*also* JA 386 ("This was one conviction for one event and one firearm."). In response, the government argued that, because the predicate offenses of carjacking and Hobbs Act robbery have different elements, both § 924(c) convictions are valid under *United States v. Luskin*, 926 F.2d 372 (4th Cir. 1991). JA 390-91.

At the sentencing hearing, Centeno argued that *Luskin* was not controlling because it involved three distinct firearm uses on three separate dates.  JA 318. He argued that the different factual situation here—the single use of a single firearm to commit multiple predicate offenses—was addressed by *United States v. Cureton*, 739 F.3d 1032 (7th Cir. 2014), which held that such facts support only a single § 924(c) conviction. JA 319-20. In addition to relying on *Luskin*, the government argued in the alternative that *Cureton* is distinguishable because the predicate offenses were "not simultaneous" in that Centeno and his accomplice first "obtained the property from [Garcia and White]" and "then ordered them to drive, which constituted the carjacking." JA 321-22; *see also* JA 323 (government counsel asserting that "After the property was handed over to the defendants, they then ordered Mr. Garcia to drive."). The government did not cite any trial testimony or record evidence to support its alternative argument. JA 321-27.

After hearing argument, the district court ruled that multiple § 924(c) convictions were justified. JA 327-30. It reasoned that, under *Luskin*, "there's no episode test under Section 924(c), and the analysis is not based on a single episode or a single kind of goal of the conspiracy." JA 328-29. Thus, because the underlying

offenses of carjacking and Hobbs Act robbery have distinct elements, the court held that multiple § 924(c) convictions were permissible under *Luskin*. JA 329-30. In addition, the court stated that the Seventh Circuit's decision in *Cureton* "is distinguishable" because the robbery was "completed" before the carjacking "[a]lthough they are very, very, very close in time." JA 328. Like the government, the court did not cite any trial testimony or record evidence in support of this alternative rationale. JA 327-28.

Based on its ruling, the district court agreed with the PSR's recommendation that Centeno faced a guidelines range of 100 to 125 months on Counts One and Three, to be followed by consecutive mandatory minimums of 5 years on Count Two and 25 years on Count Four. JA 332. The court observed that the mandatory minimum was "a very tough sentence where no one was actually killed or no one was actually seriously injured." JA 345. Similarly, the government described the mandatory minimum as "unfortunate[]." JA 336. After considering the sentencing factors in 18 U.S.C. § 3553(a), the court imposed a 60-month sentence on Counts One and Three plus the required mandatory minimum sentences on the § 924(c) counts. JA 347.

The district court filed its judgment on August 14, 2014, and Centeno filed a timely notice of appeal on August 26, 2014. JA 353, 359.

## SUMMARY OF ARGUMENT

This appeal asks whether, as a matter of statutory interpretation, Congress intended 18 U.S.C. § 924(c) to authorize a single conviction (and a 5-year mandatory minimum) or two convictions (and a 30-year mandatory minimum) where a defendant uses a single firearm a single time to commit two simultaneous crimes of violence. Six circuit courts hold that § 924(c) authorizes just one conviction in such circumstances. Only the Eighth Circuit has reached the opposite conclusion.[2]

The overwhelming majority of circuits are correct. As this Court concluded in *United States v. Camps*, the "plain language" of § 924(c) demonstrates that the statute's unit of prosecution is the "use or carry of a firearm" in connection to a predicate offense, not the predicate offense itself. 32 F.3d 102, 108-09 (4th Cir. 1994). From that premise it inescapably follows that a single use of a firearm authorizes only one conviction, whereas multiple convictions require "multiple, separate acts of firearm use or carriage." 32 F.3d at 106. That interpretation of § 924(c) is mandated by the statute's text and legislative history, by this Court's precedent interpreting § 924(c) and other similarly worded statutes, and by the rule of lenity.

---

[2]        *Compare United States v. Rentz*, --- F.3d ---, 2015 WL 430918, *8 (10th Cir. 2015) (en banc); *United States v. Cureton*, 739 F.3d 1032, 1035 (7th Cir. 2014); *United States v. Wallace*, 447 F.3d 184, 188 (2d Cir. 2006) (following *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001)); *United States v. Phipps*, 319 F.3d 177, 189 (5th Cir. 2003); *United States v. Wilson*, 160 F.3d 732, 749 (D.C. Cir. 1998); and *United States v. Johnson*, 25 F.3d 1335, 1338 (6th Cir. 1994) (en banc) *with United States v. Sandstrom*, 594 F.3d 634, 659 (8th Cir. 2010).

The district court offered two rationales for following the minority approach. First, it thought that *United States v. Luskin*, 926 F.2d 372 (4th Cir. 1991), controlled its decision. That belief was mistaken because *Luskin* addressed a different fact pattern and a different legal issue, so it did not resolve the question presented here. Tellingly, *Luskin* made no reference to § 924(c)'s unit of prosecution, and it affirmed three § 924(c) convictions based on three separate crimes of violence that each involved a separate use of a firearm. The question here was not presented in *Luskin*, and it remains a question of first impression in this circuit. *See Phipps*, 319 F.3d at 184 n.5 (surveying circuit decisions and observing that *Luskin* "do[es] not bear on the main question at issue here").

Second, the district court asserted that the cases adopting Centeno's interpretation of § 924(c) were distinguishable because, in its view, the underlying predicate offenses were completed "very, very, very close in time" but not quite simultaneously. JA 328. That assertion focuses on the wrong question. Under the majority approach, and as suggested by this Court's decision in *Camps*, the focus is on whether there are "multiple, separate acts of firearm use or carriage" (32 F.3d at 106), not on the precise point in time at which the underlying offenses are "complete" in an abstract legal sense. Here, the trial testimony is undisputed that there was only one act of firearm usage, and that is all that matters in determining how many § 924(c) convictions are authorized.

10

## STANDARD OF REVIEW

This appeal presents a question of statutory interpretation, which this Court

reviews de novo. *United States v. Abdelbary*, 746 F.3d 570, 574 (4th Cir. 2014).

## ARGUMENT

I.    **The district court erred by sustaining two § 924(c) convictions based on a single use of a single firearm.**

Congress passed 18 U.S.C. § 924(c) to provide additional punishment for a

person who uses a firearm to facilitate a federal drug crime or violent crime. The

"unmistakable objective" of the provision is to "'persuad[e] the man who is tempted

to commit a Federal felony to leave his gun at home.'" *United States v. Camps*, 32 F.3d

102, 108 (4th Cir. 1994) (quoting 114 Cong. Rec. 22, 231 (1968)). To accomplish that,

§ 924(c) provides a heightened penalty for:

> any person who, during and in relation to any crime of violence or drug
> trafficking crime . . . for which the person may be prosecuted in a court
> of the United States, uses or carries a firearm, or who, in furtherance of
> any such crime, possesses a firearm.

18 U.S.C. § 924(c)(1)(A). A first § 924(c) conviction carries a mandatory sentence of

"not less than 5 years" in prison "in addition to the punishment for [the underlying]

crime of violence or drug trafficking crime." *Id.* § 924(c)(1)(A)(i). A "second or

subsequent conviction" under § 924(c) mandates an additional consecutive sentence

of "not less than 25 years." *Id.* § 924(c)(1)(C).

The question in this case is whether a single use of a single firearm to commit

two simultaneous predicate offenses results in one violation of § 924(c) and a 5-year

mandatory minimum or two offenses and a 30-year minimum. That issue has divided

the circuit courts. Of the seven courts that have squarely addressed the issue, six have

held that such facts support only a single § 924(c) conviction. *See United States v. Rentz*,

--- F.3d ---, 2015 WL 430918, *8 (10th Cir. 2015) (en banc) (holding that "each

[§ 924(c)] charge requires an independent use, carry, or possession"); *United States v.*

*Cureton*, 739 F.3d 1032, 1035 (7th Cir. 2014) ("Because there is only a single use of a

single gun, and the predicate offenses were committed simultaneously without any

differentiation in conduct, only one § 924(c)(1) conviction can stand."); *United States v.*

*Wallace*, 447 F.3d 184, 188 (2d Cir. 2006) (holding that "a defendant who commits two

predicate offenses with a single use of a firearm may only be convicted of a single

violation of § 924(c)(1)") (applying *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001));

*United States v. Phipps*, 319 F.3d 177, 189 (5th Cir. 2003) (holding that "§ 924(c)(1) does

not unambiguously authorize multiple convictions for a single use of a single firearm

based on multiple predicate offenses"); *United States v. Wilson*, 160 F.3d 732, 749 (D.C.

Cir. 1998) (holding that only one § 924(c) conviction is warranted "where a single use

of a gun results in more than one offense"); *United States v. Johnson*, 25 F.3d 1335, 1338

(6th Cir. 1994) (en banc) (holding that only one § 924(c) conviction is authorized

where a defendant possesses "one or more firearms in conjunction with predicate

offenses involving simultaneous possession of different controlled substances"). Only

the Eighth Circuit has reached the contrary conclusion. *See United States v. Sandstrom*,

594 F.3d 634, 659 (8th Cir. 2010) (affirming two § 924(c) convictions where the

firearm was used "to commit separate offenses, even though the offenses occurred simultaneously").

Before analyzing this issue, it is important to highlight two frequently litigated § 924(c) issues not present in this case. First, this case does not involve multiple, separate firearm uses to commit multiple predicate offenses that are connected as part of a conspiracy or a continuous course of conduct. In such cases, the other circuits agree with this Court that § 924(c) authorizes multiple convictions.[3] Second, this case does not involve the use or possession of multiple firearms in relation to a single predicate offense. On that issue, the circuits are divided as to whether more than one § 924(c) conviction is authorized.[4]

---

[3]    *See United States v. Luskin*, 926 F.2d 372 (4th Cir. 1991) (affirming three § 924(c) convictions based on three separate murder attempts during course of murder-for-hire conspiracy); *United States v. Khan*, 461 F.3d 477, 485-86, 493-94 (4th Cir. 2006) (affirming four § 924(c) convictions based on four related conspiracy offenses where the defendant used "AK-47 automatic rifles, machine guns, anti-aircraft guns, rocket-propelled grenades, and mines" in relation to the conspiracies); *see also United States v. Rahim*, 431 F.3d 753, 757-58 (11th Cir. 2005) (collecting cases that reject argument that only one § 924(c) conviction is authorized when the predicate offenses, though not simultaneous, are part of "the same course of conduct"); *United States v. Malone*, 222 F.3d 1286, 1292-94 (10th Cir. 2000) (rejecting similar argument); *United States v. Burnette*, 170 F.3d 567, 571-72 (6th Cir. 1999) (same); *United States v. Casiano*, 113 F.3d 420, 242-26 (3d Cir. 1997) (same); *United States v. Romero*, 122 F.3d 1334, 1343-44 (10th Cir. 1997) (same).

[4]    *See United States v. Diaz*, 592 F.3d 467, 471-74 (3d Cir. 2010) (collecting cases); *see also United States v. Camps*, 32 F.3d 102, 103-04 (4th Cir. 1994) (holding that multiple convictions are authorized while acknowledging that several other circuits disagree).

13

**A.    As a matter of statutory interpretation, a single use of a single firearm to commit multiple predicate offenses constitutes only a single violation of § 924(c)—as the Second, Fifth, Sixth, Seventh, Tenth, and D.C. Circuits have correctly concluded.**

Turning back to this case, the issue is whether a single use of a single firearm to commit two predicate offenses supports one § 924(c) conviction or two. That issue "presents the recurring question of '[w]hat Congress has made the allowable unit of prosecution.'" *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998) (quoting *Bell v. United States*, 349 U.S 81, 81 (1955)). In other words, this case presents a question of statutory interpretation. *Id.* at 389-90; *see also Rentz*, 2015 WL 430918 at *2 (describing issue as "a matter of statutory interpretation" and concluding that issues related to double jeopardy and the *Blockburger* analysis "simply aren't presented in this appeal"); *Cureton*, 739 F.3d at 1040 (describing issue as "one of statutory interpretation, not of constitutional reach"); *Phipps*, 319 F.3d at 184 (describing issue as "purely a question of statutory interpretation").[5]

The Supreme Court addressed a similar question in *Bell v. United States*. There, the Mann Act prohibited a person from "knowingly transport[ing] in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose." 349 U.S. at 82. The defendant in *Bell*

---

[5]    In the district court, Centeno's counsel argued in part that permitting multiple § 924(c) convictions would violate the Constitution's Double Jeopardy Clause. *See* JA 386. On appeal, Centeno advances a purely statutory argument and notes that the six circuits that adopt his reading of § 924(c) rely on principles of statutory interpretation, not on the Double Jeopardy Clause.

was convicted of two Mann Act offenses, for which he received consecutive sentences, based on a single act of transporting two women across state lines "on the same trip and in the same vehicle." *Id.* The Court held that the statute was ambiguous as to whether the unit of prosecution was each woman transported (which would support two convictions) or the act of transportation (which would support only a single conviction). *Id.* at 83-84. Accordingly, the Court applied the rule of lenity and reversed the defendant's second conviction. *Id.*

The government has argued in other circuits that the unit of prosecution under § 924(c) is the predicate offense.[6] Therefore, in the government's view, if a single firearm is used to commit two predicate offenses simultaneously, then two § 924(c) convictions are permissible. *See Cureton*, 739 F.3d at 1043 (noting government's argument that the Court should "look simply at the predicate offense" in determining the unit of prosecution); *Phipps*, 319 F.3d at 185 (noting government's argument that the unit of prosecution "is the predicate offense").

This Court has already rejected the argument that the predicate offense serves as § 924(c)'s unit of prosecution. In *United States v. Camps*, the defendant was

---

[6]     The government's position on § 924(c)'s unit of prosecution has changed from case to case depending on what theory is needed to support additional charges. *See Rentz*, 2015 WL 430918 at *7 (highlighting the government's "pretty-difficult-to-ignore flip-flop" about § 924(c)'s unit of prosecution); *United States v. Anderson*, 59 F.3d 1323, 1331 (1995) (observing that "the government's litigation position regarding the meaning and application of § 924(c)(1) is rather plastic" in that "the government has adopted different positions to support somewhat different charging decisions in district courts").

convicted of multiple § 924(c) counts based on multiple, separate uses of a firearm in support of the same drug trafficking conspiracy. 32 F.3d 102, 103-04 (4th Cir. 1994). The defendant argued—based on a prior Sixth Circuit decision—that 924(c)'s unit of prosecution is the predicate offense and that, therefore, multiple firearm uses in relation to the same predicate offense justify only a single § 924(c) conviction. *Id.* at 108-09. This Court disagreed. It reasoned that "the plain language of section 924(c)(1) very clearly does *not* criminalize the underlying predicate offense" but instead creates a "separate and distinct offense" based on the "use or carry of a firearm during the commission of or in relation to these predicate offenses." *Id.* at 108; *see also Simpson v. United States*, 435 U.S. 6, 10 (1978) (holding that "§ 924(c) creates an offense distinct from the underlying federal felony"). Accordingly, this Court concluded that "bas[ing] a statute's unit of prosecution on an offense that the statute does not prohibit is illogical." 32 F.3d at 109.

The Fifth and Seventh Circuits have followed this reasoning in addressing the question presented in this case. Citing *Camps*, each has concluded that § 924(c)'s unit of prosecution is the use (or carrying or possession) of a firearm in relation to the predicate offense, rather than the predicate offense itself. *See Cureton*, 739 F.3d at 1043 (citing *Camps*); *Phipps*, 319 F.3d at 185 (same). From that premise, the courts have held that a single use (or carrying or possession) of a firearm constitutes only a single § 924(c) offense, even if that single use relates to the simultaneous commission of two predicate offenses. *Cureton*, 739 F.3d at 1043-44; *Phipps*, 319 F.3d at 185-88.

16

Applying that rule, only one of Centeno's § 924(c) convictions can stand because he used—or, more accurately, aided or abetted the use of—a firearm only one time. In other words, the government may sustain multiple § 924(c) convictions only where there are "multiple, separate acts of firearm use or carriage." *Camps*, 32 F.3d at 106. Here, Centeno and his accomplice (the black male) used a single firearm to simultaneously commit the offenses of carjacking and attempted marijuana robbery. That single use of a single firearm supports only one § 924(c) conviction. *See Cureton*, 739 F.3d at 1035; *Wallace*, 447 F.3d at 188; *Phipps*, 319 F.3d at 189; *Wilson*, 160 F.3d at 749.

The en banc Tenth Circuit recently reached the same conclusion in a majority opinion by Judge Gorsuch. The Court noted that "when seeking a statute's unit of prosecution . . . the feature that naturally draws our immediate attention is the statute's verb." *Rentz*, 2015 WL 430918 at *3. Here, the statute's verbs are "uses, carries, and possesses"—a feature which "supplies some evidence that each § 924(c)(1)(A) charge must involve an independent act of using, carrying, or possessing." *Id.* The Court concluded that the other "textual clues" from the statute point toward the same conclusion, while "the government's contrary interpretation requires some sophisticated syntactical somersaults." *Id.* at *3-*4. The surrounding statutory text also reinforces this conclusion. As the Fifth Circuit has noted, "the many subsections of § 924(c)(1) adjust the sentence for a conviction based on the

17

kind of firearm or the nature of its use during the predicate offense, not on the kind

or nature of the predicate offense." *Phipps*, 319 F.3d at 185.

This interpretation of § 924(c) finds additional support in this Court's

precedent interpreting similarly worded statutes. In *Dunford*, the Court addressed the

unit of prosecution under 18 U.S.C. § 922(g), which makes it unlawful for certain

categories of persons to "possess . . . any firearm or ammunition." The district court

had sustained multiple § 922(g) convictions based on the defendant's simultaneous

possession of multiple firearms, but this Court reversed. 148 F.3d at 389-90. After

reviewing the statutory text in light of Supreme Court and Fourth Circuit precedent, it

concluded that "[the defendant's] possession of the six firearms and ammunition,

seized at the same time from his house, supports only one conviction." *Id.* at 390; *see*

*also Cureton*, 739 F.3d at 1041 (relying on prior circuit decisions interpreting similarly

worded statutes in holding that § 924(c) authorizes only one conviction for a single

use of a firearm to commit multiple predicate offenses).

Section 924(c)'s legislative history also supports Centeno's interpretation, as

several circuits have noted. For example, the statute's "chief legislative sponsor"

(Representative Poff) stated that its purpose was "'to persuade the man who is

tempted to commit a Federal felony to leave his gun at home.'" *Muscarello v. United*

*States*, 524 U.S. 125, 132 (1998) (quoting 114 Cong. Rec. 22, 231 (1968)). Similarly,

another key supporter (Senator Mansfield) explained that the law "provides for the

first time a separate and additional penalty for the mere act of choosing to use or carry

18

a gun in committing a crime under federal law." *Phipps*, 319 F.3d at 187 (quoting 115 Cong. Rec. 34,838 (1969)). Each of these statements indicate that the provision was understood to target the choice to use a firearm. That understanding suggests that a defendant, like Centeno, who makes a single choice to use a single firearm has violated § 924(c) only a single time. *See Cureton*, 739 F.3d at 1043 (citing legislative history in support of conclusion that one § 924(c) conviction is authorized for a single use of a firearm to commit multiple predicate offenses); *Phipps*, 319 F.3d at 187 (same); *Finley*, 245 F.3d at 207 (same); *see also Rentz*, 2015 WL 430918 at *5. ("[I]f a second conviction doesn't require a second blameworthy choice to use, carry, or possess a firearm in aid of a predicate act, the logic behind the leap in punishment becomes less apparent.").

Finally, the rule of lenity applies because the plain language of § 924(c) does not unambiguously support the government's harsh interpretation of § 924(c). *See United States v. Granderson*, 511 U.S. 39, 54 (1994) ("In these circumstances—where text, structure, and history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."). Notably, in *Bell*, the Supreme Court held that lenity was required because the Mann Act failed to define the unit of prosecution "clearly and without ambiguity." 349 U.S. at 84. Several circuits have reached the same conclusion in analyzing whether § 924(c) authorizes multiple convictions on facts like those in this case. *See Rentz*, 2015 WL 430918 at *7 (invoking rule of lenity in holding that only one

19

§ 924(c) conviction is authorized for a single use of a firearm to commit multiple predicate offenses); *Phipps*, 319 F.3d at 187-88 (same); *Finley*, 245 F.3d at 207-08 (same); *Wilson*, 160 F.3d at 749 (same).

**B.    This Court's decision in *United States v. Luskin* does not resolve the question presented in this case.**

The district court believed that Centeno's interpretation of § 924(c) was foreclosed by this Court's decision in *United States v. Luskin*, 926 F.2d 372 (4th Cir. 1991). JA 328-30.  That belief is mistaken.  *Luskin* is not controlling because it resolved a different issue: whether the sentences for multiple § 924(c) convictions must run concurrently, rather than consecutively, when the convictions are based on multiple, separate firearm uses to commit multiple predicate offenses, if the predicate offenses are connected parts of a conspiracy or a continuous criminal episode. *Id.* at 374-75. On that issue, as noted above, the circuit courts agree that multiple § 924(c) convictions are authorized and that the sentences must run consecutively. *See supra* n.3.

The facts of *Luskin* are instructive. Rather than "giving [his wife] a portion of his electronics empire as part of their divorce," the defendant hired someone to murder her. *Id.* at 373. The hit man attempted to commit the murder on three separate dates, but was unsuccessful each time. *Id.* After the plot unraveled, the defendant was convicted on three counts (one for each unsuccessful attempt) of causing the hit man to travel in interstate commerce with the intent to commit

murder, a violation of 18 U.S.C. § 1952A. In addition, the defendant sustained three

corresponding § 924(c) convictions on the theory that he caused the hit man to carry a

firearm in connection with each murder attempt. *Id.* at 374.

On appeal, the defendant argued that his sentences on the § 924(c) counts

should have run concurrently rather than consecutively because, in his view, "he only

participated in one criminal episode—hiring someone to kill his wife." *Id.* at 374-75.

This Court rejected the defendant's argument. It reasoned, first, that his assertion that

he participated in only one criminal episode "misstates the facts of this case" because

he had responsibility for each of the three murder attempts. *Id.* at 375; *see also id.*

("Luskin's factual argument is untenable."); *id.* ("[T]he evidence of Luskin's ongoing

involvement in this murder-for-hire scheme was strong, and we reject Luskin's

unsubstantiated factual contention to the contrary."). The Court recognized that the

defendant's argument was, in essence, that multiple § 924(c) convictions should run

concurrently where the underlying crimes of violence were part of a conspiracy, but it

rejected that argument as incompatible with the statute's text. *Id.* at 376. Finally, the

Court observed that the Double Jeopardy Clause prohibits consecutive § 924(c)

sentences where the predicate offenses "are duplicative under a double jeopardy

analysis." *Id.* at 376-77. It concluded, however, that the defendant's "three section

1952A convictions did not violate the Double Jeopardy Clause" because "there were

three distinct attempts on [the wife's] life." *Id.* at 377.

Compared to the present case, the *Luskin* Court faced (1) a different factual situation: three separate firearm uses on three separate dates, as opposed to a single use to commit simultaneous offenses; and (2) and a different legal issue: whether the sentences for multiple § 924(c) counts must run concurrently or consecutively, as opposed to whether § 924(c) authorizes multiple convictions. Tellingly, the decision in *Luskin* made no reference to the unit of prosecution under § 924(c). And for good reason: the facts involved multiple, separate firearm uses to commit multiple, separate offenses, so there was no question that multiple convictions were authorized under the statute. Accordingly, the legal issue presented here was not addressed or decided in *Luskin*, and it remains a question of first impression in this Circuit. *See United States v. Hemingway*, 734 F.3d 323, 335 (4th Cir. 2013) (concluding that a prior decision is not "controlling precedent" and "does not dictate the outcome" with respect to an issue that "was not contested" in the prior decision).

Indeed, when *Luskin* was decided, the government did not contend that it resolved the quite different issue presented by cases like this one. In *Camps*, decided several years after *Luskin*, the government conceded "that a defendant may not be punished multiple times for *simultaneous* firearm use or carriage" even if that

simultaneous use or carriage relates to multiple predicate offenses. 32 F.3d at 109 n.9 (emphasis in original).[7]

Similarly, several other circuits have held that decisions addressing other frequently litigated § 924(c) fact patterns do not control with respect to the factual situation presented here. In *Cureton*, for example, the government argued that the question here was controlled by language from *United States v. Cappas*, 29 F.3d 1187 (7th Cir. 1994). *See Cureton*, 739 F.3d at 1042. The Seventh Circuit rightly rejected that argument:

> *Cappas* did not, however, present us with the issue we have now, that of simultaneous predicate offenses and a single use of a single gun. Read out of context, some of our language in *Cappas* might suggest that so long as there are different predicate offenses, like here, multiple § 924(c) convictions can result. But we clearly did not hold that multiple § 924(c) convictions may result from predicate offenses committed simultaneously and without any differentiation in conduct, and a single use of a firearm, as that was not an issue before us there.

*Id.* at 1042. Likewise, in *Phipps*, the Fifth Circuit distinguished *United States v. Privette*, 947 F.2d 1259 (5th Cir. 1991), because it "does not address the precise statutory question whether § 924(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses." 319 F.3d. at 183-84; *see also id.* at 184 n.5 (observing that *Luskin*, like *Privette*, "do[es] not bear on the main question at issue here"). The Second and Tenth Circuits have done the same. *See Rentz*, 2015 WL

---

[7]     Notably, the government's counsel in *Camps* was AUSA Robert J. Conrad, Jr., now a federal district court judge in the Western District of North Carolina. *See* 32 F.3d at 102.

430918 at *2 n.3 (distinguishing prior circuit decisions that addressed *Blockburger* claims based on multiple § 924(c) charges); *Finley*, 245 F.3d at 208 n.7 (distinguishing *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), a case where the defendant used a firearm multiple times to commit multiple murders while fleeing a crime scene).

Moreover, the holding of *Luskin* is entirely consistent with the holding that Centeno seeks here. In fact, both holdings flow from the legal principle adopted by this Court in *Camps*—that § 924(c)'s unit of prosecution is the use (or carrying or possession) of a firearm in relation to the predicate offense, rather than the predicate offense itself. 32 F.3d at 108-09. Once that principle is accepted, it logically follows that a single use of a firearm supports one conviction (even if it relates to multiple predicate offenses), while "multiple, separate acts of firearm use or carriage" (*id.* at 106) support multiple convictions (even if they occur as part of the same course of conduct).

The Second, Fifth, Sixth, Seventh, and Tenth Circuits have reached the same conclusion. Each holds that multiple § 924(c) convictions are authorized on facts like those present in *Luskin. See United States v. Looney*, 532 F.3d 392, 397 (5th Cir. 2008) (affirming multiple 924(c) convictions based on separate, but related, drug trafficking predicate offenses); *United States v. Paladino*, 401 F.3d 471, 478-79 (7th Cir. 2005) (same, based on multiple drug trafficking crimes committed on the same day); *United States v. Malone*, 222 F.3d 1286, 1292-94 (10th Cir. 2000) (same, based on carjacking and subsequent armed robbery of a U.S. Express business); *United States v. Burnette*,

170 F.3d 567, 571-72 (6th Cir. 1999) (same, based on kidnapping and subsequent bank robbery); *United States v. Salameh*, 261 F.3d 271, 278-79 (2d Cir. 2001) (same, based on interstate transportation and subsequent detonation of destructive device). And yet each holds that only one § 924(c) conviction is authorized on facts like those here, where the defendant uses a single firearm a single time to commit multiple predicate offenses. *See Rentz*, 2015 WL 430918 at *8; *Cureton*, 739 F.3d at 1035; *Wallace*, 447 F.3d at 188; *Phipps*, 319 F.3d at 189; *Johnson*, 25 F.3d at 1338.

### C. The predicate offenses in this case were committed simultaneously based on a single use of a single firearm.

The district court also offered a second reason for affirming both § 924(c) convictions. Based on the government's alternative argument, the court stated that the Seventh Circuit's decision in *Cureton* "is distinguishable" because, although the offenses "are very, very, very close in time," it "does seem like one [the robbery] was completed before the other [the carjacking] was completed." JA 328.

The district court erred by relying on this alternative basis to affirm the second § 924(c) conviction. As an initial matter, the court's suggestion that the predicate offenses were not simultaneous lacks any support in the record and is thus clearly erroneous. *See Consolidated Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 128 (4th Cir. 1995) ("A finding is clearly erroneous if no evidence in the record supports it."). Although the testimony of the two victims (Garcia and White) differed in minor details, their testimony was consistent and undisputed that the offenses

25

occurred simultaneously. Specifically, they testified that (1) the entire incident occurred in Garcia's car with Centeno and his accomplice (the black male) in the back seat, *see* JA 42-45, 98-103; (2) the black male pointed a gun at the victims and demanded that Garcia drive, *see* JA 43-44, 51-53, 99-101; and (3) while the black male was pointing the gun, Centeno either took White's watch and the marijuana (according to Garcia, *see* JA 101-02) or took White's watch and book bag (according to White, who said that he handed Centeno the marijuana when Centeno first entered the car and before the gun was pulled, *see* JA 44-45). Simply put, nothing in the trial record supports a finding that Centeno and his accomplice engaged in "multiple, separate acts of firearm use or carriage." *See Camps*, 32 F.3d at 106.

Moreover, even if the district court were right that "one [predicate offense] was completed before the other," it would make no difference as a matter of law. The Fifth Circuit rejected a similar argument in *Phipps*. There, the defendants entered the victim's car, "put a gun to her head," "restrained her in the back seat" and then drove from Texas to New Mexico. 319 F.3d at 180-81. Based on these actions, the defendants were convicted of kidnapping and carjacking, plus one § 924(c) count based on each of those predicate offenses. On appeal, the Fifth Circuit reversed the second § 924(c) conviction because it arose from "a single use of a single firearm." *Id.* at 184. Under the district court's logic here, however, two § 924(c) convictions would have been authorized in *Phipps* because the carjacking offense was "completed" as soon as the defendants took control of the car, but the kidnapping offense was not

26

"completed" until the victim was transported across state lines. *See* 18 U.S.C.

§ 1201(a)(1) (2000).

Nonetheless, the Fifth Circuit reversed the second conviction, reasoning that

the purpose(s) served by the use of the firearm were not determinative as to how

many § 924(c) counts were authorized:

> True enough, this single use allowed defendants to commit two crimes.
> By brandishing the firearm, they forced Pasquariello to surrender her car,
> and they abducted her. They could have committed either offense
> without committing the other: They could have taken Pasquariello's car
> without abducting her, or vice versa. In this sense, the single use of the
> firearm served two purposes. Yet, just as motive often is the essential
> fact at trial but generally not a statutory element, § 924(c)(1) criminalizes
> the use of a firearm during and in relation to the predicate offense, not
> in regard to a defendant's purposes in using the firearm.

*Id.* at 186-87. The same outcome is warranted here. As in *Phipps*, the firearm was used

only a single time, but it permitted Centeno and his accomplice to commit two

predicate offenses (carjacking and attempted marijuana robbery). Based on those

facts, only a single § 924(c) conviction is authorized.

*    *    *

In sum, this Court should follow the majority of circuits and hold that § 924(c)

authorizes only a single conviction where a defendant uses a single firearm a single

time to commit multiple predicate offenses. It should therefore vacate Centeno's

second § 924(c) conviction (Count Four). Because the district court's error did not

affect the advisory guidelines range for the remaining counts, there is no need for a

resentencing on those counts. Instead, the Court should vacate the Count Four

27

conviction and remand with instructions for the district court to enter an amended judgment. *See United States v. Barefoot*, 754 F.3d 226, 250-51 (4th Cir. 2014) (reversing two convictions and remanding for entry of an amended judgment without resentencing because the reversals did not "affect the knot of calculations under the Guidelines") (quoting *Burrell v. United States*, 467 F.3d 160, 166 (2d Cir. 2006) (Sotomayor, J.)).

## II.    The district court plainly erred by not dismissing Count Two.

Count Two of the indictment alleged that Centeno "possess[ed]" a firearm "during and in relation to" the carjacking charged in Count One. JA 9. In doing so, the indictment failed to allege that the firearm was possessed "in furtherance of" the carjacking, a necessary element for a conviction under § 924(c)(1)(A)'s possession prong. Centeno's counsel did not argue in the district court that the indictment was insufficient for this reason, so his claim is subject to plain-error review on appeal. *See United States v. King*, 628 F.3d 693, 699 (4th Cir. 2011).

Centeno's claim for plain-error relief on this issue is foreclosed by *King*, which held that a similarly worded indictment was not "plain" error because the circuit courts are divided as to "whether an indictment's mixing of the elements of § 924(c)'s 'use and carry' and 'possession' prongs constitutes reversible error." *Id.* at 700. Centeno notes the error now solely to preserve it for review in the event that the legal issue is resolved by the Fourth Circuit or the Supreme Court while his case is pending on direct appeal. *See Henderson v. United States*, 133 S. Ct. 1121, 1124-25 (2013) (holding

that an "error" is "plain" under Rule 52 if it "become[s] settled in the defendant's favor" by "the time of appellate review").

## CONCLUSION

For the reasons stated above, this Court should vacate Centeno's second § 924(c) conviction and remand for entry of an amended judgment.

## REQUEST FOR ORAL ARGUMENT

Centeno respectfully requests oral argument and submits that such argument will aid the Court in deciding the legal issue presented in this appeal. Moreover, because that legal issue has produced conflicting opinions in the other circuit courts, Centeno submits that oral argument is necessary to permit the Court to issue a published opinion that provides binding guidance to the district courts in this circuit. *See* Local Rule 36(a).

Respectfully submitted,

ROSS HALL RICHARDSON,
EXECUTIVE DIRECTOR
FEDERAL DEFENDERS OF
WESTERN NORTH CAROLINA, INC.

/s/ Joshua B. Carpenter
Joshua B. Carpenter
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.
One Page Avenue, Suite 210
Asheville, North Carolina 28801
(828) 232-9992

*Counsel for Appellant*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,731*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Garamond*]; or

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>February 9, 2015</u>        <u>/s/ Joshua B. Carpenter</u>
                                            *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 9th day of February, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE U.S. ATTORNEY
100 Otis Street, Room 233
Asheville, North Carolina  28801
(8280 271-4661

*Counsel for Appellee*

I further certify that on this 9th day February, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and an electronic copy on CD of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ Joshua B. Carpenter
*Counsel for Appellant*